```
UNITED STATES DISTRICT COURT
 MIDDLE DISTRICT OF FLORIDA
      TAMPA DIVISION
```

TODD DISTLER and JANET DISTLER,

        Plaintiffs,
v.                              Case No. 8:10-cv-1018-T-33TGW

EL-AD RESERVE AT LAKE POINTE,
L.L.C.,
        Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Pro se Plaintiffs Todd and Janet Distler's Motion for Summary Judgment (Doc. # 49) and supporting materials (Doc. # 50), which were filed on April 1, 2011. El-Ad Reserve at Lake Pointe, L.L.C. filed a Response in Opposition to the Distlers' Motion for Summary Judgment (Doc. # 52) on April 13, 2011, and filed its own Motion for Summary Judgment (Doc. # 54) on April 25, 2011. The Distlers filed a Response in Opposition to El-Ad Reserve's Motion for Summary Judgment on May 5, 2011. (Doc. # 55). For the reasons that follow, the Court denies the Cross Motions for Summary Judgment in this housing discrimination case. The Court will hold a bench trial due to the presence of disputed issues of material fact.

**I. Background**

Todd Distler was born with optic nerve damage rendering

him legally blind.[1] (Todd Distler Dep. Doc. # 54-3 at 61-62). He has a bachelors degree in sociology and a masters degree in guidance counseling. Id. at 8. He currently receives Social Security Disability benefits and has received such benefits for the past 25 years. Id. at 7-8. In addition to being legally blind, he suffers from diabetes, a heart condition, and mental and emotional disorders (including obsessive compulsive disorder). Id. at 16, 106. Mr. Distler receives section 8 housing assistance through his wife, Janet Distler. Id. at 9.

Janet Distler also receives Social Security Disability benefits due to having psychological disorders (panic, anxiety, and depression), asthma, chronic obstructive pulmonary disease (COPD), and sleep apnea. (Janet Distler Dep. Doc. # 54-4 at 5-6). Janet Distler has a bachelors degree in art and has received section 8 housing assistance since 1981. Id. at 8, 56-57, 63.

In April of 2006, after moving from New York to Florida,

---

[1] Although Mr. Distler is "legally blind" he testified, "My eyesight isn't that bad that I would be deemed totally blind or . . . having just shadow sight. I have- I have reasonably good sight in my left eye, but I am still legally blind under the law." (Doc. # 54-3 at 17). He is able to see well enough to walk without a cane or seeing-eye dog. Id. at 61-62. He is able to read documents if he holds them close to his face. Id.

2

the Distlers applied to live in an apartment complex owned by Landmark Residential in St. Petersburg, Florida.[2] (Doc. # 54-3 at 11-12). Mrs. Distler filled out the application due to Mr. Distler's vision problems. Id. at 12. On their rental application, the Distlers noted that they were not employed and received income from "Disability." (Doc. # 54-2 at 2-3). They also noted on their application that they received Section 8 housing assistance administered by "Boley Section 8 HUD." Id. at 2. Mrs. Distler testified that the "Boley" center is a "behavioral health care organization." (Doc. # 54-4 at 15).

At the time the Distlers applied to live at the apartment complex, they asked for a downstairs unit, but were informed that no such units were available. (Doc. # 54-3 at 12-14; Doc. # 54-4 at 18). The Distlers accepted a second-floor unit despite the absence of an elevator. (Doc. # 54-3 at 12-14). The Distlers both testified that walking up and down the stairs was difficult. Id. at 92. Mrs. Distler particularly testified that her asthma and COPD made it difficult for her to walk up and down the stairs to her apartment. (Doc. # 54-4 at 86). She also testified that the stairs made her anxious.

---

[2] In 2007, El-Ad Reserve, the Defendant in this action, purchased the apartment complex.

3

Id. at 43.

Despite some difficulty navigating the stairs, the Distlers testified that during their three years at the apartment, they lived "just like regular people do." (Doc. # 54-4 at 21). The Distlers testified that they performed normal activities such as shopping, walking, going to doctors appointments, doing laundry, and even volunteering for a brief period of time at the apartment complex with respect to an after-school program. (Doc. # 54-3 at 33-41). Mrs. Distler also swam in the pool and played with her grandchildren. Id. at 34, 40-41. However, in February 2007, Mrs. Distler fell on the stairs in her building and broke her ankle. (Doc. 54-4 at 24). She had surgery on her ankle, wore a cast, and completely recovered. Id. at 24-26.

As for Mr. Distler, he testified that during the day, he cleaned the apartment, listened to music, and visited with friends. (Doc. # 54-3 at 19). On August 15, 2007, Mr. Distler tripped at the parking lot of a Family Dollar Store and injured his lower back. (Doc. # 54-4 at 26). He spent one night in the hospital and otherwise did not require continuing medical treatment for his back. (Doc. # 54-3 at 51).[3] Mr.

---

[3] The Distlers filed suit against the Family Dollar Store, recovered approximately $85,000, and ended up with

4

Distler testified that his back injury did not cause him to change his normal activities, although he moved more slowly and carefully. Id. at 56.

The Distlers also enjoyed feeding the ducks that lived by the lake on the property and raised ducks and ducklings (which the Distlers perceived to be at risk because herons were eating the ducklings and because ducks were being "abducted" around Thanksgiving). Id. at 26-32. The ducks became accustomed to the feedings and began to follow the Distlers up the stairs to the Distlers' second floor apartment. Id. at 29.

The Distlers testified that they verbally requested to be moved to a first floor apartment in April, May, March, and November 2008, and February 2009. Id. at 25, 83; Doc. # 54-4 at 70-71. According to the Distlers, each request was denied. (Doc. # 54-4 at 86). Chrissy Schmelzer, a property management employee of El-Ad Reserve, filed a declaration indicating that the Distlers never requested to be moved to a first floor apartment. (Doc. # 54-9 at 4-5). Luis Caballero and Marylee Wyatt, leasing office employees of El-Ad Reserve, signed declarations stating they have no recollection of the Distlers requesting to move to a different apartment. (Doc. # 54-5).

---

approximately $34,000 in hand after the payment of certain expenses. (Doc. # 54-3 at 122).

The Distlers claim that El-Ad Reserve's failure to provide a downstairs apartment amounted to housing discrimination. El-Ad Reserve, on the other hand, claims that the Distlers never made their request for a downstairs apartment known to management and that management never knew that the Distlers needed an accommodation due to any disability.[4]

To the Distlers' disappointment, the previously vacant first floor apartment that the Distlers desired to rent was offered to an unmarried couple: Ms. Brigandi and Mr. Bland. The Distlers testified that they did not get along with Ms. Brigandi and Mr. Bland. (Doc. # 54-3 at 25). The Distlers called the police and the fire department when Ms. Brigandi and Mr. Bland hosted a barbeque with a fire pit at the apartment complex. (Doc. # 54-4 at 48).

The Court's file contains two detailed letters (dated October 8, 2008, and February 18, 2009) from Ms. Brigandi to the management of the apartment complex complaining about the Distlers. (Doc. # 54-9 at 7-12). Among other complaints, Ms. Brigandi stated that (1) the Distlers' duck feeding caused

---

[4] Schmelzer indicated in her declaration: "No one would know just by looking at Janet or Todd Distler that they had any physical disabilities. Mr. Distler never wore glasses, used a cane, or any other assistive devices when he visited the office. He always signed documents on the line indicated for signature." (Doc. # 54-9 at ¶ 6).

6

duck feces to litter the sidewalks, attracted flies and rats, and posed a nuisance to the complex; (2) that Mrs. Distler loudly screamed that Mr. Bland was a child molester and a mean drunk; and (3) that Mr. Distler flicked cigarette ashes off of his balcony onto the porch of Ms. Brigandi and Mr. Bland's first floor apartment. Id.

In February of 2009, El-Ad Reserve notified the Distlers that it opted not to renew the Distlers' lease. (Doc. # 54-8). When the Distlers received this information, they headed to the leasing office and demanded to speak to Darcie McDonough, the property manager. (Doc. # 54-4 at 78). Both Mrs. Distler and the property manager had raised voices in a dispute about why the Distlers' lease was not renewed. Id. Mrs. Distler testified that McDonough's conduct amounted to "a violent threat." Id. Mr. Distler testified that McDonough raised her arms in frustration at the Distlers and chased the Distlers out of the office. (Doc. # 54-3 at 115-116). Mr. Distler testified that he was so upset by the non-renewal of the lease that he battered Mrs. Distler, spent the night in jail, and was Baker Acted. Id. at 130.

The Distlers ultimately vacated the apartment and moved to a different apartment complex where they were able to live on the first floor. The Distlers filed the instant action,

pro se, on April 28, 2010. (Doc. # 1).  After two rounds of motions to dismiss, the Distlers' complaint has been whittled down to two claims under the Fair Housing Act:  In count one, the Distlers allege that El-Ad Reserve engaged in discrimination in violation of the Fair Housing Act by failing to accommodate them with a downstairs unit.  (Doc. # 27 at 3). In count three, the Distlers allege that El-Ad Reserve "intimidated and interfered with their Fair Housing Rights for accommodation and renewal of their lease." (Doc. # 27 at 4). They seek recompense for "fear, emotional upheaval and mental stresses." Id.[5]

This case is set for a bench trial during the Court's October, 2011, trial term.  Cross Motions for Summary Judgment are before the Court.

---

[5] The Court dismissed count two for failure to state a claim on May 13, 2011. (Doc. # 56).  That claim was predicated upon the fact that El-Ad Reserve did not give the Distlers a reason for terminating their lease.  The Court determined that El-Ad Reserve was not required to provide a reason for terminating the lease because such termination occurred at the expiration of the leasehold, rather than during the leasehold. 24 C.F.R. § 932.310 bars a landlord from terminating a tenancy during the term of the lease without giving a specific explanation: "(e) Owner notice –(1) Notice of grounds. (i) The owner must give the tenant a written notice that specifies the grounds for termination of tenancy during the term of the lease." 24 C.F.R. § 982.310 (e)(1)(i)(emphasis added).

8

**II. Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits,

9

or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id.

### III. **Analysis**

Handicap discrimination under the Fair Housing Act includes "a failure to make a reasonable accommodation in rules, policies and services when such accommodations may be necessary to afford a handicapped individual with equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(b).

The Eleventh Circuit has discussed failure to accommodate claims under the FHA on a number of occasions.  In United States v. Hialeah Housing Authority, 418 F. App'x 872 (11th Cir. 2011), the court enumerated the elements for a failure to accommodate claim under the FHA: "A plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." Id. at 875.

In Hialeah Housing Authority, the Eleventh Circuit reversed a trial court's grant of summary judgment in favor of the defendant.  The Eleventh Circuit noted that "whether a

requested accommodation is required by law is highly fact specific, requiring case-by-case determination." Id. The Court also explained that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and a desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." Id. at 876.

Furthermore, in Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-1219 (11th Cir. 2008), the court noted, "[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have been given an opportunity to make a final decision with respect to Plaintiffs' request, which necessarily includes the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation is required by law."

As to the Distlers' first claim, for failure to accommodate, the Court denies the Motions for Summary Judgment because disputed issues of material fact abound. Among other disputes, there is conflicting evidence in the record as to whether (and if so, when) the Distlers actually requested to

11

be accommodated by the opportunity to lease a downstairs unit. In addition, on the present record, the Court is unable to make the "highly fact-specific" inquiry as to whether a downstairs until was a required accommodation necessary to afford the Distlers an equal opportunity to use and enjoy their dwelling.

The FHA also provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any right granted or protected under the FHA. 42 U.S.C. § 3617. To prevail on such a claim, the Distlers must show: (1) they are protected under the FHA, (2) they were engaged in the exercise or enjoyment of fair housing rights, (3) the defendant coerced, threatened, intimidated, or interfered with the plaintiffs on account of their protected activity, and (4) the defendants were motived by an intent to discriminate.

The Court also denies the Cross Motions for Summary Judgment with respect to count three of the Distlers' complaint--for intimidation and interference under the FHA. As with count one, genuine issues of material fact cloud the record and preclude the entry of summary judgment. The presence or absence of intent cannot be determined on the

12

conflicting record here.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The Cross Motions for Summary Judgment (Doc. # 40) and (Doc. # 54) are denied.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of August, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel and Parties of Record

13